WILLIAM MARTIN v. THE MICHIGAN & OHIO RAILROAD
COMPANY.

*How. Stat. sec. 3423—Providing for the payment of labor debts by railroad
companies—Does not apply to contractors or subcontractors—Order by
subcontractor for payment of labor debt in goods—Drawn on merchant
pursuant to agreement—Is not an assignment of the labor debt—Nor will
its payment operate as such—Presentation to railroad company of items
of claim for labor or material—Essential to a recovery under How. Stat.
sec. 3423.*

1. How. Stat. § 3423, making it the duty of railroad companies to see
that all *laborers* employed by contractors and subcontractors are paid
before payment is made to them, subject to certain conditions therein
named, does not apply to contractors or subcontractors. *Chicago &
N. E. R. R. Co. v. Sturgis,* 44 Mich. 538.

2. A subcontractor on a railroad delivered to laborers in his employ orders
on a merchant for the delivery to bearer (naming the laborer) of a
certain sum in goods, to be charged to drawer's account, which were
paid by the drawee, who brought suit against the railroad company
on the orders without presenting the bill of items required by the
second proviso to How. Stat. § 3423.

  *Held,* that the orders, upon their face, or their payment, cannot be
treated as an assignment of the labor debts due the laborers. *Beecher
v. Dacey,* 45 Mich. 92.

  *Held,* further, that the presentation of said bill of items was *essen-
tial* to a recovery under said statute.

Error to Calhoun. (Hooker, J.) Argued July 8, 1886.
Decided July 15, 1886.

Assumpsit. Plaintiff brings error. Affirmed. The facts
are stated in the opinion.

*George Woodruff* (*Louis C. Miller,* of counsel), for appel-
lant:

When the laborer finished his work he had a claim against
Hakes, secured by the statutory liability of the railroad com-
pany, both of which claims were choses in action and assign-
able: How. Stat. § 7344; *Cook v. Bell,* 18 Mich. 387; *Tut-
tle v. Howe,* 14 Minn. 148; *Goff v. Papin,* 34 Mo. 178; *Mo.,
Ky. & Texas R. R. Co. v. Brown,* 14 Kan. 557.

Where the evidence of a contract or assignment is wholly in writing, the effect and interpretation is a question of law for the court: *Thompson v. Richards*, 14 Mich. 172.

Where the negotiations are oral, it is for the jury to determine what was intended and understood by the parties, as well as what was said and done, the entire construction of the contract being left to them: *Strong v. Saunders*, 15 Mich. 339; *Jenness v. Shaw*, 35 Id. 20; *Engle v. Campbell*, 42 Id. 565; *McKenzie v. Sykes*, 47 Id. 294; *Spalding v. Archibald*, 52 Id. 365.

Where the evidence of a contract consists partly of oral and partly of written negotiations, or partly in transactions without any oral or written communications, the court should interpret the written matter, and leave it for the jury to find whether the writings, as thus interpreted, with the conduct of the parties, make out a contract: *Drakeley v. Gregg*, 8 Wall. 268; *Conely v. McDonald*, 40 Mich. 155.

In the construction of contracts the situation of the parties and the entire subject-matter of the transaction are to be considered in order to determine the intent: *Norris v. Showerman*, 2 Doug. 16; *Wilson v. Troup*, 2 Cow. 228; *Lee v. Wheeler*, 11 Gray, 236; *Moore v. Meacham*, 10 N. Y. 207.

Parol evidence is admissible to explain the intent of a contract or transaction, and a witness may testify as to what the purpose was: *Catlin v. Birchard*, 13 Mich. 110; *Willard v. Fralick*, 31 Id. 431; *Collins v. Tillou*, 26 Conn. 368.

And it is the intent that must control in the construction of contracts,—it *is* the contract: *Quick v. Stuyvesant*, 2 Paige, 92.

Such intent is a question of fact for the jury: *Gregory v. Wendell*, 39 Mich. 337; S. C. 40 Id. 432–7.

No particular form of words is necessary to constitute an assignment: *Row v. Dawson*, 3 Leading Cases in Eq. 612.

If a lessor deliver a lease to a creditor, saying "you may have what is due and to become due," it will constitute an assignment of the lease: *Dennis v. Twitchell*, 10 Metc. 180.

The only thing required for the assignment of a bond is delivery; no words are necessary: *Licey v. Licey*, 7 Penn. St. 251; *Runyan v. Mersereau*, 11 Johns. 534.

Delivery of an execution will transfer the judgment upon which it is issued: *Jones v. Witter*, 13 Mass. 304; *Dunn v. Snell*, 15 Id. 481; *Prescott v. Hull*, 17 Johns. 284.

The delivery of a written contract is sufficient evidence of an assignment if the other party has notice: *Mowry v. Todd*, 12 Mass. 281.

Anything will operate as an assignment which makes it a duty to assign, and gives one party a just claim to the rights and remedies of the other: *Hart v. Western R. R. Co.*, 13 Metc. 99–108.

Whether or not a transaction is a payment or a purchase of the claim depends upon the intention of the parties, and must be submitted to the jury: *Rockingham Bank v. Claggett*, 9 Fost. (N. H.) 292; *Kuhn v. North*, 10 Serg. & Rawle, 399; *Croft v. Moore*, 9 Watts (Penn.), 451–5; *Farmers' Bank v. Fordyce*, 1 Penn. St. 454; *Doremus v. Williams*, 4 Hun, 458.

The statute should be construed liberally, so as to make it effectual to secure the laborers in their pay for work done: *Warner v. Hudson River R. R. Co.*, 5 How. Pr. 454; *Kent v. N. Y. Cent. R. R. Co.*, 2 Kern. 628; *Mundt v. Sheboygan & Fond du Lac R. R. Co.*, 31 Wis. 451; *Redmond v. Galena & S. W. Ry. Co.*, 39 Id. 426.

Upon performing the work the laborer had a lien against Hakes, with the right to enforce it against defendant: *Peters v. St. Louis & Iron Mt. R. R. Co.*, 23 Mo. 111.

This lien was not discharged by taking the orders, there being no evidence of an agreement to take them as payment: *Gardner v. Gorham*, 1 Doug. 507; *Hotchin v. Secor*, 8 Mich. 494; *Dudgeon v. Haggart*, 17 Id. 273, 280; *Burrows v. Bangs*, 34 Id. 304; *Au Sable River Boom Co. v. Sanborn*, 36 Id. 358.

The laborers transferred a claim against Hakes secured by this statutory lien, which passed with the claim of necessity: *Edwards v. Bohannon*, 2 Dana (Ky.), 98; *Edwards v. Frank*, 40 Mich. 617.

*Frank L. Skeels* (*H. H. Barlow*, of counsel), for defendant:

There were no labor debts owing to Hakes: *Peck v. Miller*, 39 Mich. 594; *Chicago & N. E. R. R. Co. v. Sturgis*, 44 Id. 538.

This case is ruled by *Beecher v. Dacey*, 45 Mich. 100.

MORSE, J. The plaintiff brought suit against the defendant corporation for certain labor claims, under the act for the protection of laborers and persons furnishing materials for the construction and repairing of railroads, and found in Howell's Statutes, in sections numbered 3423, 3424, and 3425.

He bases his right to recover upon the following arrangement and agreement : Zenas A. Hakes was a subcontractor, working upon a portion of the line of the Toledo & Milwaukee Railway Company, of which company the defendant is successor by consolidation. He had no visible property, save a few scrapers and tools used in his business of grading and clearing. John Wiseman and the plaintiff, William Martin, were merchants, living in Marshall, and doing business there. Hakes made arrangement with Wiseman and Martin to take his orders from the laborers, his employes, and pay them in goods, and he agreed to pay these orders, so to be taken, out of money coming to him by virtue of his contract with the railroad company ; or, if not so paid by him, he agreed, as plaintiff claims, that Wiseman and Martin should have all the rights against Hakes or the company which the laborers themselves had, such being claimed to be the usual custom of contractors in using such orders.

In pursuance of such agreement Hakes delivered to laborers employed by him in the construction of said road-bed, in February, March, and April, 1883, a large amount of orders, of which the following is a sample copy :

                              "MARSHALL, April 6, 1883.
"*Mr. William Martin :*   Please  deliver to bearer,  Martin Perkins, $2 (two  dollars) in  goods, and charge same to account of
          "Yours, etc.,                      Z. A. HAKES."

The whole amount of orders so taken was $559.26. The laborers brought the orders to Wiseman and Martin, delivered them, and received their value, mostly in goods, but sometimes in money.

The orders were never paid by Hakes or by the company.

Hakes was a contractor under J. H. McLane & Son, who failed to pay Hakes, and therefore he testifies he was unable to pay these orders. Neither did the railroad company pay Hakes the amount of them.

It appears from the testimony that J. H. McLane & Son were subcontractors under Brown, Howard & Co., who had a contract directly from the railroad company.

The plaintiff claims that April 26, 1883, he presented an itemized claim for these labor orders to George Marsh, an assistant engineer of the railroad company, and made a demand for the payment of the same.

August 13, 1883, plaintiff gave, as he claims, a second notice, and an itemized statement of his claims, to William H. Boeh, an assistant engineer of the road.

November 30, 1883, John Wiseman assigned the orders belonging to him to the plaintiff, and on the same day plaintiff served two notices upon the railroad company,—one notice containing a demand for the payment of $263.86, with an itemized bill of the labor of each employe as shown by the orders received and paid by him; and the other for $352.67, being the amount assigned to him by Wiseman, with an itemized statement of the same character as the one attending his notice, to which was attached the following:

"I hereby certify that the above amounts are due to the persons named for labor and board on the M. & O. Railroad, in accordance with my pay-roll, which amount has been signed over to John Wiseman.          Z. A. HAKES."

It does not appear that Wiseman or Martin took any assignments from the laborers for their claims against the railroad company, or had any agreement with any of them in reference to the matter.

The evidence shows that the railroad company paid Brown, Howard & Co. in full for their contract.    J. H. McLane & Son failed to pay Hakes, as he testifies, the amount of these orders, and therefore he was unable to pay them.

August 13, 1883, there was owing to J. H. McLane & Son from Brown, Howard & Co. about $3,000.    There was nothing then owing either company from the railroad.    On that date the railroad company notified Brown, Howard & Co. not to pay any more money to J. H. McLane or J. H. McLane & Son until the claims for labor and materials furnished on the contract of J. H. McLane & Son were paid. Between that date and the thirtieth of November, 1883, J. H. McLane & Son paid certain labor claims; and as they were paid and certified by McLane, Brown, Howard & Co.

would pay them; so that November 30, 1883, they were owing J. H. McLane & Son about $2,500.

It does not appear from the record whether this $2,500 was ever paid to J. H. McLane & Son by Brown, Howard & Co. or not.

It also appears from the testimony of John Wiseman that most of the work of the laborers to whom he gave goods upon Hakes' orders was performed in November and December, 1882.

The circuit judge instructed the jury to find a verdict for defendant, which they did, and judgment passed in its favor.

We think the circuit judge was correct in his ruling.

There was no evidence in the case of any assignment of the laborers' claims against the railroad to either Wiseman or the plaintiff, nor any testimony tending to show that the laborers, in taking pay upon these orders, understood that they were disposing of or selling or assigning their claims for labor to any one.

The declaration avers such an assignment, but there was no proof of one from any laborer.

The plaintiff's own evidence shows that the arrangement was made with Hakes that plaintiff should pay the orders, and Hakes would pay him therefor every month. Wiseman's arrangement was the same.

Hakes swears that he intended when he gave the orders to have them paid out of money that would become due to him under his contract with J. H. McLane & Son, and intended that, in the course of the business usual in such cases, Martin and Wiseman should both have the benefit of the Michigan statutes and laws as a means of getting their pay in case he did not pay and take up such orders.

The paying of the orders drawn by Hakes, or his assigning his claims to them, does not help Martin and Wiseman, as this Court has heretofore held that the statute does not apply to contractors or subcontractors. *Chicago & N. E. R. R. Co. v. Sturgis*, 44 Mich. 538; *Peck v. Miller*, 39 Id. 594.

And these orders, upon their face, or their payment, cannot be treated as an assignment by the payees or bearers of

their labor debts to Martin and Wiseman. *Beecher v. Dacey,* 45 Mich. 92.

There are other reasons why the plaintiff was not entitled to recover.

The evidence fails to show that a bill of items of the material and labor furnished was presented to the company, or any of its agents, prior to the usual pay-day of said company, which was on the fifteenth of every month. The notice of April 26, 1883, only contained a statement of the amount of orders, and to whom paid by Martin. No itemized account was presented by Martin of his claim, or of Wiseman's, assigned to him, until November 30, 1883, which was too late. The notice claimed of August 13 was simply a demand that the company pay a judgment Martin had recovered against Hakes before a justice in the city of Marshall. How. Stat. § 3423 (proviso).

November 30, 1883, the company was neither indebted to Brown, Howard & Co., J. H. McLane & Son, or Z. A. Hakes. *Bottomley v. Port Huron & N. W. Ry. Co.,* 44 Mich. 542.

We are referred to the case of *Missouri, K. & T. Ry. Co. v. Brown,* 14 Kan. 557, as authority to support the proposition that the acceptance of pay upon and delivery of these orders by the laborers was equivalent to an assignment by them of their claims against the railroad company, under the statute.

The opinion in that case seems to hold that the payment by a third person of orders drawn upon him by a contractor in favor of laborers is a transfer of their claims to such person. But their statute is broader than ours, and makes the railroad company, in case of its failure to require a bond of the contractor, absolutely liable to the laborers, and also to all persons furnishing provisions or goods of any kind to the contractor, and the company was liable to Brown in that case without calling the payment of the orders an assignment. But if such is the construction in Kansas of such a transaction, it cannot be so considered in this State.

The judgment of the court below is affirmed, with costs.

The other Justices concurred.