W. L. CULBERTSON, Appellant, v. SALINGER & BRIGHAM, H. C. McALLISTER *et al.*, Appellees, B. I. SALINGER, Cross-Petitioner, Appellant.

**Default Judgment:** VACATION. The entry of a default judgment
1   after appearance, is merely error, and not without jurisdiction rendering it void, and will not be vacated after the term until it is adjudged there is a defense to the action.

**Vacation of Erroneous Judgment:** DEFENSE. Before a motion,
2   after the term, to set aside a default judgment improvidently entered can be sustained, there must be a showing of facts in defense to the action that would likely defeat the claim upon which the judgment is based, and in determining the sufficiency of such defense, the situation of the parties may be taken into consideration. Evidence of the claimed defense considered and held sufficient to warrant a new trial.

*Appeal from Carroll District Court.*—HON. S. M. ELWOOD, Judge.

WEDNESDAY, OCTOBER 14, 1903.

IN the original petition the plaintiff asked judgment against H. C. McAllister on a written agreement to sign the notes sued on as surety' for Salinger & Brigham. After the plaintiff's evidence had been introduced, November 27, 1897, an amendment to the petition was filed, in which it was asserted that the agreement was partly oral and partly in writing. Thereafter the parties agreed in open court that the answer of McAllister, which included a general denial, theretofore filed, should stand as the answer to the petition and all amendments. The trial resulted in a judgment as prayed, and, after it had been reversed and the cause remanded, in pursuance of the opinion of this court (found in 111 Iowa, 447), the administrators of McAllister and his wife were substituted as defendants. Under the apprehension that the amend_

ment to the petition had not been answered, the plaintiff procured a default to be entered against the administrators December 8, 1900, and judgment again entered as prayed.  A petition to set aside the default and grant a trial on the merits was filed December 31st of the same year, and on hearing the relief sought was granted.  The plaintiff appeals.  In the same action Salinger had filed a cross-petition January 27, 1897, in which he alleged that he was at one time a member of the firm of Salinger & Brigham; that in connection with matters mentioned in the petition he had executed his notes for about $4,000 to McAllister, securing the same by a life insurance policy deposited with the latter; that said notes were wholly without consideration, and given for an antecedent debt of Brigham, and praying that said notes be canceled, and the policy be returned.  On the 16th of April, 1897, McAllister moved for a more specific statement of the negotiations preceding the execution of the notes, and especially of the circumstances surrounding their execution; that the debt of Brigham for which they were given be specifically described; that he state whether the transactions referred to were oral or in writing, and, if any were in writing, that he set out copies.  An amendment to the petition was filed September 18, 1900, describing the notes as seven in number, one for $300 and six for $500 each, all dated July 11, 1893, and one payable each year.  At the November, 1900, term of court, another amendment was filed, in which the death of McAllister, and also that of his wife, to whom he had bequeathed these notes, was suggested, and the substitution as party defendant of the administrator of the estate of the deceased's wife requested.  It will be noticed that the amendments do not meet the purposes of the motion for more specific statement, and do not add anything to the cause of the action previously stated.  On December 8, 1900, Salinger procured a default to be entered because of the alleged failure to plead to the

cross-petition and decree to be entered as prayed. A petition to set aside the default, and for trial on the merits, was filed by the administrator December 31, 1900, and on hearing the relief sought was granted. The cross-petitioner appeals. Separate appeals were prosecuted, but for convenience both will be disposed of in one opinion.—*Affirmed.*

*H. W. Macomber* and *B. I. Salinger* for appellant.

*Jayne & Hoffman* and *G. W. Bowen* for appellees, except Salinger & Brigham.

LADD, J.—The appellant concedes that the judgments were improvidently entered, and should have been set aside, if the evidence established that defenses to the causes of action stated exist. On the other hand, appellees urge that, as the defaults and judgments were erroneously entered, it was not essential that defenses be shown as a condition precedent to granting of the relief prayed. Section 3790 of the Code authorizes the court to set aside defaults on such terms as may appear just, if application be made at the same term at which the default was entered, and among other things requires an affidavit of merits as a condition precedent. But the court in numerous cases has held that the filing of this affidavit is not necessary when the default has been entered without jurisdiction, improvidently, or by mistake. *Messenger v. Marsh*, 6 Iowa, 491; *Rice v. Griffith*, 9 Iowa, 539; *Boals v. Shules*, 29 Iowa, 507; *Beasley v. Cooper*, 42 Iowa, 542; *Brandt v. Wilson*, 58 Iowa, 485; *Hoitt v. Skinner*, 99 Iowa, 360; *First Nat. Bank v. Flynn*, 117 Iowa, 493. In other words, an affidavit of merit is essential only when the party was actually in default. But the applications herein were not made at the term at which the judgment was rendered, and therefore are controlled by section 4091 of the Code. *Streeter v. Gleason*, 120 Iowa, 703. The second subdivision of that section authorizes a judgment to be set aside because of fraud

*1. DEFAULT judgment: vacation.*

practiced in obtaining it. Had the court been without jurisdiction, another remedy would have been available. See *Iowa Savings & Loan Ass'n v. Chase*, 118 Iowa, 51. But, as the parties had appeared, the court, in entering judgment acted erroneously, but not without authority. Undoubtedly the error might have been corrected by appeal. See *Manning v. German Ins. Co.*, 107 Fed. Rep. 52, 6 C. C. A. 144. The appellee, however, chose to seek the remedy available under the statute, and, in order to succeed, must have complied with section 4096 of the Code, which is imperative in prohibiting the vacation of a judgment "until it is adjudged that there is a cause of action or defense to the action in which the judgment is rendered"; otherwise any relief which might be granted would be of no substantial benefit to the petitioner. Why should the court set aside a judgment which it had the power to render merely to cure an error or wrong that can be of no avail in preventing the entry of a similar judgment in its stead? This would be but idle ceremony. Courts cannot be expected to fritter away their time on errors or mistakes which result in wronging no one, and parties who ought to have judgment entered against them cannot be heard to complain under this section of the manner by which this may have been accomplished.

II. In determining whether a defense has been shown, the situation of the parties may well be taken into consideration. Both Brigham, the partner of Salinger, and McAllister, the party with whom the transactions involved in this litigation were had, are dead. In so far as the record discloses, Salinger is the only living witness thereto, and his testimony might possibly have been excluded on trial as incompetent under section 4604 of the Code, a point we do not decide. If so, and the statute, should be construed to exact a showing of an affirmative defense as a condition precedent to setting aside the default, this would result in giving the party wrongfully

2. VACATION of erroneous judgment: defense.

procuring the judgment an unfair advantage, for, though he might have been wholly unable to make out a case, yet, before the judgment so procured may be set aside, a defense reasonably likely to succeed must be shown. But the statute ought not to be construed as meaning such a defense as shall admit the plaintiff's cause of action. What is contemplated is a showing of such a state of facts as likely will defeat the claim upon which the judgment is based. The kind of or technical form of the pleading is not very material. *Bank of Stratton v. Dixon*, 105 Iowa, 148. The defense itself must exist, and, if sufficient, even though technical in character, to defeat judgment on plaintiff's claim, it is enough. In other words, proof of any defense to the merits, which, if established, would have resulted in a different judgment, and that such a result is reasonably likely to follow another trial, is all the statute requires. Any other interpretation would often enable the one party to obtain an undue advantage through the wrongful entry of a judgment, and deprive the other of the opportunity of defending himself against a claim regardless of its merits, without any fault on his part. But the administrator introduced the deposition of McAllister taken in the case, and of course this waived the provisions of the statute. He testified: "I knew Salinger and Brigham were indebted to W. L. Culbertson, but I had no knowledge of their transactions. I had no knowledge of what they did with the money borrowed, and no interest therein. I never acquiesced in their borrowing said money or giving said notes, and in no manner agreed to assume payment of the same, or stand as surety or guarantor of said notes." Appellant insists that this answer was stricken out. The transcript shows otherwise. A motion to that effect was made, but never ruled on. Salinger testified to an oral agreement on the part of McAllister to sign the notes as surety. In view of the fact that Salinger's testimony may be open to objection, and

the dispute raised by that of McAllister, we think the court did not abuse its discretion in ordering a new trial.

III. Appellant insists that the evidence conclusively shows that the debt for which his notes were executed to McAllister was that of Brigham alone, and, being antecedent, there was no consideration. The deposition of McAllister shows that he testified to having furnished Salinger & Brigham money to loan; that Salinger owed him a little over $4,100 for which he had his (Salinger's) notes; that, after Brigham's death, he had agreed to release Brigham's indebtedness to him if Salinger would execute said notes; that the loan business done through the firm was begun by making Brigham his agent, to whom the money was always sent; that Salinger gave the notes in settlement of the firm's indebtedness to him. Mrs. Brigham's testimony tended to show that Salinger and Brigham had been partners in loaning McAllister's money, and a balance sheet dated July 1, 1887, showing an indebtedness to him of $9,198.33, signed by Salinger & Brigham in the former's handwriting, was introduced in evidence. On the other hand Salinger declared that he had never had any of the money sent to Brigham, and neither he nor Salinger & Brigham had ever received any money of McAllister; that he and Brigham were merely jointly interested in numerous transactions, but that no general partnership existed between them; that Salinger & Brigham assumed the debt of Brigham to McAllister without consideration, and that there was no consideration for the notes in suit. What we have already said concerning the possible incompetency of Salinger's testimony is again applicable here, and in view of this, the conflict raised by that of McAllister, and the difficulties under which the administrator necessarily labored, we think the default was properly set aside. The result reached renders it unnecessary to pass upon the motions the parties have indulged in, or other rulings in the case.—AFFIRMED.